UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | 21 MC 102 (AKH) (all actions naming Tully Construction Co. Inc., and Tully Industries Inc. as identified in the Table attached hereto) |
| | **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS TULLY CONSTRUCTION CO. INC AND TULLY INDUSTRIES, INC'S MOTION TO TRANSFER AND/OR STAY** |
| THIS DOCUMENT APPLIES TO ALL WORLD TRADE CENTER DISASTER SITE LITIGATION | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS TULLY CONSTRUCTION CO. INC AND TULLY INDUSTRIES, INC'S MOTION TO TRANSFER AND/OR STAY**

**PRELIMINARY STATEMENT**

Defendants Tully Construction Co. Inc. and Tully Industries, Inc. (collectively "Tully") submit this reply memorandum in further support of their motion to transfer all actions[1] currently pending against Tully in Consolidated Master Docket Number 21 MC 102 ("21 MC 102") to Consolidated Master Docket Number 21 MC 100 ("21 MC 100") or, in the alternative, to stay all actions in 21 MC 102 as against Tully pending resolution of the appeal currently before the United States Court of Appeals for the Second Circuit.

Under every rationale previously articulated by the Court for distinguishing between 21 MC 100 and 21 MC 102, these actions should be transferred to 21 MC 100. The Check-Off

---

[1] Footnote 1 in the Declaration of Christopher LoPalo, Esq. submitted with Plaintiffs' Opposition to Tully's Motion lists an additional nine (9) cases naming Tully as a defendant in 21 MC 102. To date, Tully has only been served with 100 Check-Off Complaints in 21 MC 102 and has not been served with the additional nine Check-Off Complaints listed in the footnote.

Complaints in 21 MC 102 naming Tully as a defendant all contain claims relating to the work Tully performed as a contractor for the City of New York (the "City") at the Deutsche Bank building (130 Liberty Street), a location this Court has previously designated as part of the World Trade Center ("WTC") Site (the area at issue in 21 MC 100). *See* Case Management Order ("CMO") 3, 21 MC 100; August 9, 2005 CMO, 21 MC 102. Furthermore, this Court already has ruled that actions against Tully for its work as a City contractor in the Deutsche Bank building properly belong in 21 MC 100, and not 21 MC 102. *See* April 13, 2007 Order, Docket No. 06-cv-15494, 21 MC 100 (AKH) (the "*Zablocki* Order") (previously attached as Exhibit D to the Certification of Joseph E. Hopkins, Esq., dated August 1, 2007 ("Hopkins Cert.")). Finally, the Court's recent articulation of a basis for the distinction between 21 MC 100 and 21 MC 102 focused on the nature of the work being done by the defendant – namely, whether it was acting as a City contractor or not. (*See* June 15, 2007 Status Conference Transcript 15:21 to 16:1).[2] It is undisputed that the only work done by Tully relating to the collapse of the WTC was as a City contractor. Therefore, for all of the reasons indicated above, these actions should be transferred to 21 MC 100.

Moreover, the Court should review Plaintiffs' opposition in light of their overall course of conduct since March 2007, by which Plaintiffs' counsel have sought to circumvent the legitimate authority of the Second Circuit by manipulating this Court's dockets. Should the Court decide that the transfer of these cases is not appropriate at this time, Tully respectfully requests that the actions against Tully be stayed pending resolution of the appeal currently before the Second Circuit. Defendant Deutsche Bank consents to such a stay and Plaintiffs' arguments

---

[2]    Indeed, Plaintiffs' counsel himself referenced the Court's discussion of this distinction in opposing a motion to stay brought by Verizon. *See* Declaration of Christopher LoPalo previously submitted in Opposition to Defendant Verizon's Motion to Stay at ¶ 9.

in opposition to a stay are untenable and inadequate. Without a stay of these actions (whether by transfer into 21 MC 100 or by staying these matters as to Tully within 21 MC 102), Plaintiffs will succeed in their scheme of juggling docket numbers to circumvent the Second Circuit's stay. Allowing Plaintiffs to proceed in this fashion will unavoidably and significantly prejudice Tully's rights.

## ARGUMENT

I.     THE ACTIONS AGAINST TULLY IN 21 MC 102 PROPERLY BELONG IN 21 MC 100

A.     THE GEOGRAPHIC LOCATION OF THE PLAINTIFFS' WORK AT THE SITE IS RELEVANT TO DETERMINING THE APPROPRIATE DOCKET TO FILE THEIR CLAIMS.

Plaintiffs and Deutsche Bank both argue that Tully should not rely on the WTC Site definition set forth by this Court in CMO 3 in 21 MC 100 as determinative of the proper docket placement of these actions against Tully because CMO 3 indicates that the definition of the WTC Site should not be used for purposes other than construing the meaning of CMO 3. But they ignore the clear evolution of the application of this definition in other contexts since the entry of CMO 3. In fact, the Court repeatedly has relied on this definition of the WTC Site for purposes other than simply construing the meaning of CMO 3 – the Court used this WTC Site definition when creating the 21 MC 102 and 21 MC 103 Master Dockets (*see* August 9, 2005 Case Management Order, 21 MC 102; Case Management Order 1, 21 MC 103) and the Court used this definition in denying Plaintiff Steven Zablocki's request to transfer his claims from 21 MC 100 to 21 MC 102 (*see* April 13, 2007 Order, Docket No. 06-cv-15494, 21 MC 100 (AKH) (the "*Zablocki* Order")).

In the very CMO that established the 21 MC 102 docket, the Court stated that all cases brought by plaintiffs "based on conduct that occurred <u>outside</u> the area defined as the World

3

Trade Center Site in Case Management Order 3 of the 21 MC 100 case" would constitute the 21 MC 102 docket. August 9, 2005 CMO, 21 MC 102 at ¶ 3 (emphasis in original). In directing that plaintiffs alleging claims relating to conduct that occurred <u>outside</u> the area defined as the WTC Site would file their claims in 21 MC 102, the Court indicated that claims relating to conduct that occurred <u>inside</u> the area defined as the WTC Site properly belong in 21 MC 100. Thus, contrary to the assertions of Plaintiffs and Defendant Deutsche Bank, the CMO 3 definition of the WTC Site is highly relevant to determine the appropriate docket in which these plaintiffs should file their claims. It is undisputed that the Deutsche Bank Building located at 130 Liberty Street is included in the CMO 3 definition of WTC Site. And it is indisputable that all of the claims against Tully that presently are docketed in 21 MC 102 are based entirely on Tully's alleged conduct as it worked at the Deutsche Bank building as a City contractor. Thus, pursuant to the CMO that created the 21 MC 102 docket, the actions against Tully currently pending in 21 MC 102 properly belong in 21 MC 100.[3]

Notably, the Court already has considered and decided this issue as to Tully. And contrary to the assertions of Plaintiffs and Defendant Deutsche Bank, the Court's decision in *Zablocki* is not inconsistent with Tully's request for transfer. In the *Zablocki* Order, the Court denied plaintiff's request to transfer his case from 21 MC 100 to 21 MC 102 because that plaintiff worked at the Deutsche Bank building, "a location considered part of the World Trade Center [S]ite, as defined in Case Management Order No. 3, 21 MC 100." *See Zablocki* Order.

---

[3]     Both Plaintiffs and Defendant Deutsche Bank argue that many of the plaintiffs alleging claims against Tully also allegedly worked at locations other than the Deutsche Bank building. Tully was not present at any location named in any complaint filed in 21 MC 102 other than the Deutsche Bank building (which is part of the WTC Site as defined in CMO 3). Thus, these cases are improperly brought against Tully in 21 MC 102, notwithstanding whatever possible involvement other defendants may have had. In any event, should the Court determine that transfer of these actions into 21 MC 100 is not appropriate because of the other locations at which these plaintiffs allegedly worked, then Tully respectfully suggests that the Court may determine that these actions should be instead transferred to 21 MC 103 and then stayed as to Tully.

Plaintiffs and Defendant Deutsche Bank both ignore the fact that the Court also specifically denied Plaintiff Zablocki's request to transfer his case because Tully "is one of the 21 MC 100 contractors that joined the City of New York's interlocutory appeal to the Second Circuit, which resulted in the stay" of the 21 MC 100 docket. *See id.* The *Zablocki* Order thus illustrates that the CMO 3 definition of the WTC Site is relevant to considerations of appropriate docket placement. Therefore, Tully respectfully submits that these actions against Tully should be transferred to the 21 MC 100 docket.

Most recently, at the June 15, 2007 status conference in 21 MC 102, the Court stated that the Court's intent was that the 21 MC 100 docket consist of "cases that were focused mainly against the City" and that the 21 MC 102 docket consist of cases brought against "private or public homeowners independent of the Department of Design and Construction." (June 15, 2007 Status Conference Transcript 15:21-24).[4] In explaining its rationale, the Court recognized that the distinction between dockets is a function of the identity of the defendants:

> What's the justification of having a different collection of cases in 102 from what I have in 100? I'll answer it. It's because it's a different Defendant. The City, except as an owner of property, is not involved. The violations alleged of the labor law were by the managers and owners of the specific properties. I mean, folks, that's what I had in mind.

(*Id.* at 19:18-25). Defendant Deutsche Bank's argument that Tully's approach to designating cases is "mechanical" completely ignores the distinctions between the 21 MC 102 and 21 MC 100 dockets articulated by this Court. The instant motion by Tully seeks to satisfy this statement of intent and the Court's other expressed rationales underlying the distinctions between 21 MC 100 and 21 MC 102. Tully was a City Contractor performing debris removal at the WTC Site

---

[4]    Although taking pains to comment on these statements by the Court in opposing Verizon's motion for a stay, here Plaintiffs do not even attempt to address this most recent statement of intent by the Court.

(including at the Deutsche Bank building) and was never a "manager" or "owner" of the Deutsche Bank building.  All of the claims currently pending against Tully in 21 MC 102 relate to the work Tully performed while acting as a City contractor, and therefore, these claims should be transferred to the 21 MC 100 docket.

### B.  TULLY IS NOT JUDICIALLY ESTOPPED FROM ARGUING THAT THE ACTIONS PENDING AGAINST IT IN 21 MC 102 SHOULD BE TRANSFERRED TO 21 MC 100

Plaintiffs' argument that Tully is judicially estopped from requesting the transfer of these actions from 21 MC 102 to 21 MC 100 is without merit.  Plaintiffs assert that Tully is judicially estopped from moving to transfer these actions because Tully previously argued (before this Court and before the Second Circuit) that this Court was divested of jurisdiction over the 21 MC 100 docket once a Notice of Appeal was filed to bring the appeal of the Court's immunities decision before the Second Circuit.  The doctrine of judicial estoppel prohibits a party from arguing a factual position inconsistent with one the same party took in a prior proceeding where a decision resulted that accepted that factual position.[5]  Judicial estoppel is a complex doctrine designed to protect the integrity of the judicial process.[6]  In order for judicial estoppel to be invoked, (1) the party against whom it is asserted must have advanced an inconsistent factual position in a prior proceeding, and (2) the inconsistent factual position must have been adopted by the court in some manner.[7]  Contrary to Plaintiffs' claims, Tully's request now to transfer

---

[5]   *Bates v. Long Island RR. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993) *cert. denied* 510 U.S. 992 (1993).

[6]   *OSRecovery, Inc. v. One Groupe Intern., Inc.*, 462 F.3d 87, 93 (2d Cir. 2006).

[7]   *Peralta v. Vasquez*, 467 F.3d 98, 105 (2d Cir. 2006), citing *Bates*, 997 F.2d at 1038; *see also Adler v. Pataki*, 185 F.3d 35, 41 n. 3 (2d Cir.1999) ("[J]udicial estoppel applies only when a tribunal in a prior separate proceeding has relied on a party's inconsistent factual representations and rendered a favorable decision.").

these cases to the appropriate docket is neither inconsistent with nor contradictory to any argument Tully has previously made.

Tully previously made the legal argument that the Court was divested of jurisdiction over the actions consolidated under 21 MC 100 by virtue of the notice of appeal filed by the City and its contractors in the Second Circuit. This Court disagreed. As a result, commensurate with taking its appeal, Tully (among others) sought a stay of proceedings before the Second Circuit. The Second Circuit subsequently granted a stay of all proceedings in 21 MC 100 pending resolution of the appeal.

Tully now has requested that the Court transfer certain cases improperly brought in 21 MC 102 (a docket over which the Court undeniably has jurisdiction) to 21 MC 100. This request is in no way inconsistent with some prior factual position taken by Tully – there simply is no issue of any "factual position" taken by Tully then or now. Moreover, even if the issue of "divestment" was a factual position previously taken by Tully, the Second Circuit's stay order does not speak to the issue of divestment in any way. Furthermore, Tully's transfer or stay motion also is not inconsistent with Tully's prior legal argument that the District Court was divested of jurisdiction over 21 MC 100 upon the filing of the Notice of Appeal before the Second Circuit. Tully never argued that this Court lacked the administrative power to transfer actions out of 21 MC 102 and into 21 MC 100. Nor does Tully's motion somehow equate with a request to lift the stay currently in place by the Second Circuit; rather, the relief Tully seeks is to enforce and uphold the intention of that stay. Tully's current motion to transfer and the bases for the motion are straightforward: No party disputes that the Court has jurisdiction over the proceedings in 21 MC 102; indeed, the Court has stated that the current "stay does not apply" to 21 MC 102. *See* June 15, 2007 21 MC 102 Status Conference at 26:7-8. It also cannot be

disputed that it is within a court's inherent authority to transfer or stay a case within its jurisdiction.[8]  As such, the Court has the authority and jurisdiction to transfer those cases against Tully currently incorrectly docketed in 21 MC 102 to 21 MC 100.

In addition, the Court already has recognized that it has the inherent authority to transfer cases between dockets for administrative purposes.  The Court previously transferred cases from 21 MC 100 to 21 MC 103 subsequent to the stay of the 21 MC 100 docket (in so doing, the Court expressly noted that the 21 MC 100 claims remained stayed).  Moreover, Plaintiffs' counsel already has argued that the Court may transfer actions from one docket to another as demonstrated by their prior letter request (since dropped, apparently) that certain cases be transferred from 21 MC 100 to 21 MC 102.[9]  (*See* Plaintiffs' May 16, 2007 letter attached to the Certification of Joseph E. Hopkins dated August 23, 2007 ("Hopkins Cert.") as Exhibit A).

Tully has taken no inconsistent factual position that was adopted by a Court in a decision and Tully is not judicially estopped from requesting the transfer of these cases.  Furthermore, the transfer of these cases is within the administrative authority of the Court.  Plaintiffs' counsel's insinuation that Tully's request somehow violates the Second Circuit's stay is at best doublespeak, but more simply is absurd.  Therefore, Tully respectfully requests that the Court transfer these actions from 21 MC 102 to 21 MC 100.

## II.     IF THE COURT DETERMINES NOT TO TRANSFER THE ACTIONS, THEY SHOULD BE STAYED AS TO TULLY

Defendant Deutsche Bank does not oppose Tully's request, made in the alternative, to stay the claims against Tully in 21 MC 102 pending resolution of the Second Circuit appeal.

---

[8]     *See Collazo v. U.S.*, 368 F.3d 190, 201 (2d Cir. 2004) (citing *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F. 3d 310, 316-17 (2d Cir. 1998)); *Johnson v. Morgenthau*, 160 F.3d 897, 899 (2d Cir. 1998).

[9]     Ironically, it is Plaintiffs' counsel (not Tully) who are first arguing one way (their May 16, 2007 letter requesting transfer) and then the other (their current opposition brief now indicating that transfer is not possible).

Although Plaintiffs oppose Tully's request for a stay, they fail to put forth any substantive basis for such opposition. Rather, Plaintiffs only offer the rhetorical truism that the public interest favors the speedy resolution of this litigation. But as the Court undoubtedly appreciates, the interests of expediency cannot be permitted to trample on substantive rights. In any event, granting Tully's request to stay the actions against it in 21 MC 102 pending the resolution of the appeal does not thwart the goal of speedy resolution of this litigation. The cases may simply proceed without Tully. The Second Circuit already has ordered that thousands of other similar actions must await its determination of the pending appeal. And oral argument on the appeal is currently scheduled for October 1, 2007, a few weeks away. A decision to stay the 21 MC 102 actions as to Tully will therefore only result in a brief delay regarding one defendant – that delay can hardly be considered, as Plaintiffs claim, "unconscionable."

Plaintiffs erroneously claim that Tully's burden in proceeding in 21 MC 102 is "illusory" and that Tully can only show "burden" by demonstrating that it will incur a "non-reimbursed expense." Plaintiffs' definition of "burden" is unique and untenable in federal jurisprudence. It is indisputable that the claims against Tully in 21 MC 100 and the claims against Tully in 21 MC 102 arise from the same work – work undertaken by Tully as a contractor of the City of New York in response to the 9/11 terrorist attacks. (*See* Declaration of Defendant Tully Construction Co. Inc., pursuant to Section III(A)(3) of Case Management Order 3 at 6 (relevant excerpts previously attached to August 1, 2007 Hopkins Cert. as Exhibit A)). The Second Circuit stayed the 21 MC 100 proceedings related to Tully's work as a City contractor and Tully must have the protection afforded by that stay, regardless of Plaintiffs' counsel's improper placement of actions in another docket. The Court cannot allow plaintiffs to maneuver around the Second Circuit's stay by changing a docket number.

Refusing to protect Tully in these actions will prejudice Tully by requiring it to file pleadings, make and defend motions, and undergo discovery that the Second Circuit has determined must await resolution of the appeal. Permitting identical claims against one of these appellants to proceed and allowing identical discovery against one of these appellants to go forward merely because the Plaintiffs attached a different docket number to their pleadings is inappropriate and should not be permitted. Forcing Tully to participate in proceedings contrary to the intent of the Second Circuit's decision to stay 21 MC 100 will waste time, money and resources. These burdens and prejudices are real, go far beyond any "non-reimbursable expense" and weigh heavily in favor of a stay. Plaintiffs' failure to address any of these issues in any meaningful manner evidences the lack of any meritorious arguments in opposition to Tully's request that these actions be stayed as to Tully.

## III.    PLAINTIFFS' OPPORTUNISTIC DOCKET PLACEMENT MUST NOT BE COUNTENANCED BY THE COURT

Plaintiffs' counsel's May 16, 2007 letter to the Court (which failed to follow the joint letter submission policy of the Court) requested the transfer of 120 cases from 21 MC 100 to 21 MC 102. Counsel for Verizon opposed Plaintiffs' request by their letter dated May 31, 2007. Before counsel for the City and its contractors could make their own submission, the Court issued an Order Regulating Proceedings in the three master dockets on June 4, 2007 and advised all parties that Plaintiffs' transfer request would be addressed at the June 15, 2007 status conference in 21 MC 102. At that status conference, the Court ordered that all transfer requests were to be made by motion upon notice and thereby declined to rule on Plaintiffs' unilateral submission. (Tr. 29:9-11).

In response, Plaintiffs' counsel neither prepared a joint letter submission with Defendants, nor brought the appropriate motion. Instead, Plaintiffs' counsel usurped control of

the dockets, disregarded the Court's directive, and proceeded to grant themselves the relief they sought by re-filing cases previously brought in 21 MC 100 in 21 MC 102 (of course, without ever dismissing the 21 MC 100 actions that they brought in the first place). (*See* chart attached to Hopkins Cert. at Exhibit B).

From the moment the Second Circuit issued a stay of proceedings in 21 MC 100, Plaintiffs' counsel has engaged in a course of conduct designed to maneuver as many cases as possible out of 21 MC 100. Indeed, the Worby Groner & Napoli Bern firm did not file a single complaint in 21 MC 102 until after the stay was in place. Since the issuance of the stay, the Worby firm has filed *at least* 634 actions in 21 MC 102. Accordingly, if the actions against Tully in 21 MC 102 are not transferred or stayed as to Tully, Plaintiffs' counsel will have been improperly permitted to succeed in their efforts to circumvent the stay and violate Tully's substantive rights.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Tully's moving brief, Tully respectfully requests that this Court transfer all actions currently pending against it in 21 MC 102 to 21 MC 100 or, in the alternative, stay all such actions as to Tully pending resolution of the appeal before the Second Circuit.

Respectfully submitted,

_____s/_____
James E. Tyrrell, Jr., Esq.
PATTON BOGGS LLP
Counsel for Tully Construction Co. Inc.,
Tully Industries, Inc.

Dated: August 23, 2007